**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Lombard Public Facilities Corporation, | ) | Case No. 17 B 22517 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

**Amended Memorandum Opinion on Motions to Dismiss (Dkt. Nos. 34 and 40)**

**Introduction**

Lord Abbett Municipal Income Fund, Inc. - Lord Abbett High Yield Municipal Bond Fund ("Lord Abbett") and United States Trustee Patrick Layng ("U.S. Trustee") separately seek the dismissal of this bankruptcy case on the basis that the Debtor, the Lombard Public Facilities Corporation ("LPFC" or the "Debtor"), is ineligible to be a debtor under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), because it is a governmental unit. Mid-America Hotel Partners, L.L.C. and Subordinated Securities, L.L.C. have joined the Motions to Dismiss. Joinder, Docket No. 164. Because the court finds that the Village of Lombard is not actively engaged in running or managing the Debtor's business operations, the Motions to Dismiss will be denied.

The Village of Lombard (the "Village") is an Illinois municipality pursuant to the 1970 Illinois Constitution. Article VII, Section 7. In 2003 the Village passed Ordinance No. 5351 ("Ordinance") which provided for the Village's incorporation of the Lombard Public Facilities Corporation as an Illinois not-for-profit corporation. The Ordinance also approved LPFC's

Articles of Incorporation, By-Laws and its initial slate of directors. *See* Ex. A to Lord Abbett's Mot. to Dismiss, Docket No. 34 - Ex. A - Articles of Incorporation; Ex. B - By-Laws and Ex. C - Ordinance 5351.

The Village formed the LPFC "for the sole purpose of acting on behalf of the Village in financing, securing a location and constructing a convention hall and hotel facility within the Village." *See Lombard Public Facilities Corp. v. Illinois Dep't of Revenue*, No. 2005MR001505, 2005 WL 6203446, at ¶ 2 (Dupage Cty. Cir. Ct. Dec. 12, 2005). The Village incorporated the Debtor as a separate entity because it was not authorized to borrow as much money as it needed to complete the Project. Public facilities corporations are to be a "business agent of the municipality" to acquire rights and property for "municipal convention hall purposes." 65 ILCS 5/11-65-10(a). A public facilities corporation shall assist the municipality it serves in its essential governmental purposes. 65 ILCS 5/11-65-10(b). Control is to be maintained by the municipality by appointing, removing and replacing board directors of the public facilities corporation and by having title transferred to it upon retirement of any bonds or other debt instruments issued by it in connection with its development. 65 ILCS 5/11-65-10(c).

The By-Laws made the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2004)), the State Gift Ban Act (5 ILCS 425/1 *et seq.* (West 2003)) and the conflict of interest statute (50 ILCS 105/3 (West 2004)) applicable to the Debtor. Is this enough to subject a private entity to those laws?

Ordinance 5351 states that "providing for the financing, constructing and equipping of such convention hall and hotel facilities by the [L]PFC is in the public interest of the citizens of this Village and it is a proper public purpose in relation to which the President and Board of

Trustees agree to cooperate with the [L]PFC and to assist it in fulfilling the requirements of all agencies of the federal, state and local governments." Ordinance at § 3. It authorized LPFC to issue, sell and deliver bonds, encumber any real property or equipment acquired by it for the purpose of financing the construction and equipping of the hotel and convention center, (the "Project"), and to enter into contracts for the sale of bonds and the construction and acquisition of the Project. Upon redemption and retirement of LPFC's bonds, the Ordinance provides that the Village will accept from [L]PFC title to the Project free and clear of any and all liens and encumbrances thereon. Ordinance at § 5. The parties seeking to dismiss this bankruptcy case characterize this provision as requiring LPFC to transfer title of the Project to the Village upon redemption and retirement of the bonds. Will the Village accept title to the Debtor's property if it later becomes subject to liens before redemption or retirement of the bonds? The court doubts that the Village will accept transfer of title under those circumstances, incurring secured debt.

The Village's taxing power and full faith and credit were not pledged as security for any of the bonds. *Lombard Public Facilities Corp. v. Dept. of Revenue*, 378 Ill. App. 3d 921, 924 (Ill. App. 2nd Dist. 2008). This aspect of the Project shows that the Village and Project are very separate. This lack of liability and responsibility shows that the Debtor is not the Village's agent.

The Debtor lost its legal battles to be declared a governmental unit at the Department of Revenue and in the Circuit Court. The Appellate Court noted that the Debtor did not have authority to impose taxes, maintain a police force, provide water or sewage treatment and had not received a charter from the State of Illinois recognizing it as a governmental body. *Id.*, at 926. The Debtor's principal acknowledged that the By-Laws required the Debtor to abide by the terms of Illinois' Open Meetings Act (5 ILCS 120/1 *et seq.),* the State Gift Ban Act (5 ILCS 425/1 *et*

*seq.*) and the conflict of interest statute (50 ILCS 105/3) even though they did not apply to other private entities. This reflects a connection to the Village, not control of the Debtor by the Village.

That the Debtor is subject to the laws may not be enough to get a court to actually enforce them against the Debtor by those statutes' terms. A court could find that breaches of these provisions constitute breaches of contract, not actionable violations of state law as courts do when a tort defendant violates state law causing personal injury. Courts instruct juries that violations are evidence that a defendant has acted negligently. This court also questions whether the Debtor can qualify for immunity from tort liability under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101.1. If not, the Debtor may not be a governmental unit.

In *Carroll v. Paddock*, 199 Ill. 2d 16 (2002) Justice Kilbride noted that an appellate court found that a hospital and human resources center were not local public entities under Illinois' Local Governmental and Governmental Employees Tort Immunity Act, 746 ILCS 10/1-206 because they were not publicly funded. That too is a reason to find that the Debtor is not a governmental unit; the Village did not appropriate funds to construct the Debtor's facilities and has not spent its funds to backstop the bonds, which obligation is not enforceable as the Village can disavow it by not appropriating funds to do so.

The statute under which the Debtor was organized, 65 ILCS 5/11-65-10(b), states that "a public facilities corporation means an Illinois not-for-profit corporation whose purpose is charitable and civic . . ." The Illinois Supreme Court noted in *Carroll* that the characteristics making a not-for-profit entity a charitable organization do not, without more, also qualify it as a

"local public entity" under the Tort Immunity Act, noting that the entities in issue conducted operations common to many entities in the private sector. *Carroll*, at 26. This court notes that the record does not disclose that the Debtor was operated differently than other hotels and convention centers, especially since they are operating under management agreements with Westin, a national entity well known in the industry.

The *Carroll* court also noted that private entities improve or affect the public interest but that fact alone does not transform them into public businesses. *Carroll,* at 27. "Public business is the business of government and a local public entity must either be owned by or operated and controlled by a local governmental unit." *Id.* That Court stated that "a not-for-profit is involved in the operation of the government's public business if and only if the not-for-profit is tightly enmeshed with government either through direct governmental ownership or operational control by a unit of local government." *Id.*

In the Debtor's matter the Illinois Appellate Court ruled that it was not an agent or instrumentality of a local government eligible for an exemption from the Retailers' Occupation Tax Act as a governmental body. That Court noted that where corporations create separate entities and "receive economic benefits therefrom, they will not be permitted to disregard the maintenance of separate corporate identities." *Lombard Pub. Facilities Corp. v. Dep't of Revenue*, 378 Ill. App. 3d 921, 933 (2d Dist. 2008) (quoting *Superior Coal v. Dep't. of Finance*, 377 Ill. 282 (1941)). The Appellate Court ruled that the Village would not be allowed to avoid the Debtor's existence as a separate entity to avoid a sales tax burden. This court finds that Lord Abbett, Mid-America Hotel Partners, L.L.C., Subordinated Securities, L.L.C. and the U.S. Trustee have failed to show that the Debtor is not a separate entity for purposes of eligibility to

be a debtor under chapter 11 of the Bankruptcy Code. The Debtor was incorporated as a separate entity whose operations are separate from the Village's.

The Village may one day become the owner of the Project if the bonds get paid. This court agrees with the Appellate Court, however, that a "future benefit is merely a future expectancy," not an indicia of ownership necessary to find that the Debtor is a unit of government. *Id.* at 934.

This court agrees with the Appellate Court's findings that the Debtor was not organized as an agency or branch of the Village, that it did not perform functions necessary to maintain the Village's existence and that while Village employees were appointed to the Debtor's board, corporate meetings were conducted separate from Village meetings and the board had to get Village approval for limited activities. "Overall, the Village was not dependent upon LPFC for its governmental activities, and LPFC was also not dependent on the Village for its day-to-day project management activities." *Id.* at 935.

**Tax/Funding**

The Debtor financed its acquisition and build-out of the Project by issuing the following series of tax-exempt governmental bonds: (a) the $63,915,000 original principal amount Lombard Public Facilities Corporation Conference Center and Hotel First Tier Revenue Bonds, Series 2005A-1 (the "A-1 Bonds"); (b) the $53,995,000 original principal amount Lombard Public Facilities Corporation Conference Center and Hotel First Tier Revenue Bonds, Series 2005A-2 (the "A-2 Bonds"); (c) the $43,340,000 original principal amount Lombard Public Facilities Corporation Conference Center and Hotel Second Tier Revenue Bonds, Series 2005B (the "B Bonds") and (d) the $22,460,000 original principal amount Lombard Public Facilities

Corporation Conference Center and Hotel Third Tier Revenue Bonds, Series 2005C-1, Series 2005C-2, and Series 2005C-3 (the "C Bonds" and, together with the A-1 Bonds, the A-2 Bonds and the B Bonds, the "Bonds"). The Debtor was able to issue the Bonds on a tax-exempt basis because, as stated in its Official Statement to prospective bond investors ("Official Statement"), LPFC "constitutes an instrumentality of the Village for federal tax purposes." Official Statement at I. Docket 34, Ex. D. The Debtor stated in the tax appeal that "[t]he LPFC acts as an agency or instrumentality of the Village." 2005 WL 6203446, at ¶ 19. Should the Debtor be allowed to say otherwise herein? This query will be answered later. The court notes that the Village is not an obligor on the debt in issue, contributing to the finding that the Village does not actively operate or manage the Debtor's operations.

In the Debtor's 2003 application for exemption from the Illinois Retailers' Occupation Tax Act it alleged that its purchases were made by the Village, a governing body. The Illinois Department of Revenue denied the application. In the Debtor's complaint seeking review of that decision it admitted that it was incorporated for the sole purpose of securing a location for and constructing the Project; that net income would be received by the Village; title would vest in the Village for no consideration upon redemption or retirement of the bonds; that it was the Village's alter ego; that it was formed by the Village to perform essential government purposes and that all purchases made by the Debtor in furtherance of the construction of the Project were made on behalf of the Village, the ultimate recipient of the benefits of the Project. Ex. B to U.S. Trustee's Mot. to Dismiss, Docket No. 40. p. 5. Compl. for Administrative Review, *Lombard,* 2005 WL 6203446, at ¶ 2.

The Debtor's Articles of Incorporation state that LPFC "is organized exclusively for the promotion of social welfare and for not-for-profit purposes and to assist the Village of Lombard in its essential government purposes." Articles of Incorporation at 5(a). That being said, however, the court finds that the Debtor was organized to strengthen the Village's economic base, not to provide essential government services such as police, fire and health care services.

Lord Abbett points out that according to Illinois law as a public facilities corporation, the Debtor is subject to the Village's control. *See* 65 ILCS 5/11-65-10(c) ("The municipality shall retain control of the public facilities corporation . . ."). Mot. to Dismiss, Docket No. 34, p.6. Control has to be accomplished, according to Illinois law, "by means of the municipality's expressed legal right, set forth in the articles of incorporation of the public-facilities corporation, to appoint, remove and replace the members of the board of directors of the public-facilities corporation." *Id.* The Village, however, does not control the Debtor. It appoints its directors who, according to the record herein, have acted to further the Debtor's purposes to operate a profitable hotel and convention center. That may be because the Debtor's interests and the Village's interests are aligned.

Another issue is the Villages's financial statements. In accord with Government Accounting Standards requirements the Village reports the Debtor's financial performance as a "component unit" on its financial reports. The U.S. Trustee points out that although they are legally separate, as a "component unit," the Village is financially accountable for the Debtor, subject to certain conditions. The most important condition, of course, is the backstop condition that the Village pays only if it chooses to appropriate funds to do so. That does not make the Village financially accountable for the Debtor. Because payment by the Village is optional, the

Debtor is connected to, but not controlled by the Village.

Pursuant to the Tax Rebate Agreement entered into between the Village and the Debtor, the Debtor is to transfer title of the hotel and convention facility to the Village upon the earlier of the redemption or retirement of the bonds issued by the Debtor for the construction and operation of the hotel and convention facility. In addition, the Debtor may not sell, transfer or convey title to the Project to a third party without the prior consent of the Village's President and Board of Trustees, with consent to be solely within their discretion. By-Laws, § 10.1. This provision does not weigh against the finding that the Village does not control the Debtor since the Debtor could hold title to the Project indefinitely, there being no provision requiring that title pass to the Village at a certain point in time.

The Debtor is governed by a five-member board of directors, each of whom has to be appointed by the Village President with the advice and consent of Lombard's Board of Trustees. By-Laws, §§ 4.1 and 4.2. The appointees do not have to be Village officers or employees. The Debtor's directors serve at the pleasure of the Village and may be removed with or without cause by a majority vote of the Village President and Board of Trustees. By-Laws, § 4.1. The Debtor's officers are chosen annually by the Debtor's board of directors at an annual meeting. They hold office until their successor's selection, or until such officer's resignation, death or removal. The officers may be removed with or without cause by resolution adopted by the Village President and its Board of Trustees. By-Laws, § § 5.2, 5.3. The court notes that the directors are Village employees. However, the directors do not operate or manage the Project. The Project has an asset manager, and separate hotel and restaurant managers who report to the asset manager, not to the Village. The Debtor has no employees.

The Village and the Debtor entered into a Tax Rebate Agreement. Docket No. 34, Ex. E to Mot. to Dismiss. It provides that the Village will refund to the Debtor certain state and local taxes collected by the Village in connection with the Project. Tax Rebate Agreement, § V(A), (c) at p. 6.[1] That agreement also provides for the Village to backstop certain of the Debtor's debt service obligations on the bonds, subject to the requirement of a prior appropriation. Tax Rebate Agreement, § V(D)-(E) at p. 7. That agreement also committed the Village, subject to the requirement of a prior appropriation, and other conditions, to provide a Supplemental Reserve Fund for the Series A Bonds in an annual amount of $2 Million from its Hotel/Motel Tax Fund or from other of its funds if the bond service payment could not be paid from the Project's revenues. These provisions do not burden the Village; it can choose to not appropriate funds to make these payments. The Village is involved with this Project, however, it does so from a distance, without binding financial obligations.

**Law**

An entity is eligible for bankruptcy relief under chapter 11 of the Bankruptcy Code if it is a person that may be a debtor under chapter 7. 11 U.S.C. § 109(d). The Code's definition of person, in relevant part, specifically excludes government units: "The term 'person' includes individual, partnership, and corporation, but does not include governmental unit . . . " 11 U.S.C. § 101(41). The term governmental unit is defined as: "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States ..., a State, a Commonwealth, a District, a Territory, a municipality, or a foreign

---

[1] The tax rebate feature of the arrangement may be similar to what states and municipalities routinely offer various manufacturers to attract their business.

state; or other foreign or domestic government." 11 U.S.C. § 101(27).

Section 101 (27)'s legislative history makes clear that the Code defines governmental unit broadly, but that the relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function. H.R. Rep. No. 595, 95th Cong, 1st Sess 311 (1977). The Debtor does not carry out governmental functions; it is a commercial enterprise which competes with others in the hotel and convention center industry.

The movants argue that the Debtor is the Village's instrumentality and for that reason is ineligible for chapter 11 bankruptcy relief. The court finds that it is not an instrumentality of the Village. Section 1112(b) of the Bankruptcy Code allows for the dismissal of a case for "cause." A debtor's ineligibility to be a debtor may be "cause" to dismiss a case. *In re Borges*, 440 B.R. 551, 562 (Bankr. D.N.M. 2010). A debtor bears the burden of establishing its eligibility to be a debtor under Code section 109. *In re Gen. Growth Properties, Inc.*, 409 B.R. 43, 70 (Bankr. S.D.N.Y. 2009). The Debtor has carried this burden.

In *In re Estate of Medcare HMO*, 998 F.2d 436, 440 (7th Cir. 1993) the Seventh Circuit held that "[w]hen interpreting the Bankruptcy Code, as with any other statute, a court must look first to the statutory language." That Court also noted that "in defining categories excluded from federal bankruptcy protection, courts are to look to the law of the state of incorporation of the entity in question." *Id.* Illinois law requires that the governments that set up public facilities corporations control them, specifically by appointing their directors. The Village appoints the Debtor's directors, however, it does not control its operations or management.

In *TI Federal Credit Union v. DelBonis*, 72 F.3d 921, 937-38 (1st Cir. 1995) the First Circuit held that federal credit unions qualified as government units within the meaning of 11

U.S.C. § 523(a)(8), which excepted educational loans extended by government lenders from discharge. The Bankruptcy Code does not define instrumentality. However, this court agrees with Lord Abbett's position that when used in the context of section 101(27)'s definition of governmental unit, it should cover entities that have an active relationship with federal, state or municipal governments and that carry out governmental functions. Lord Abbett's reliance on the *DelBonis, Northern Mariana Islands* and *Charlton County* cases, however, is not persuasive.

In *DelBonis* the First Circuit, in holding that a credit union was a governmental unit in the context of a student loan discharge exception, noted that such entities were created by Congress to perform significant governmental purposes of "broadening the availability of credit in the United States [.],"to invest in governmental obligations, invest in securities and serve as fiscal agents of the United States and depositories for public funds. Such functions were regarded as important governmental functions by other courts. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 211 (1921); *U.S. v. Michigan*, 851 F.2d 803, 806 (6th Cir. 1988) ("Federal credit unions also perform another, though somewhat less significant, federal function. Under 12 U.S.C. § 1767, federal credit unions are authorized to act as fiscal agents of the United States and as depositories of public money." (internal citation omitted)). Operating a hotel and convention center, however, is not a government function. Generating and encouraging economic activity is worthwhile, but it is not a core government function.

In *In re Northern Mariana Islands Retirement Fund*, 2012 WL 8654317 (D.C.N. Mariana Islands 2012) the Court held that a retirement fund was a governmental unit ineligible for bankruptcy protection under 11 U.S.C. § 109(d). That Court noted that the legislative history of section 101(27) defines governmental unit in the broadest sense but noted that a department,

agency, or instrumentality did not include an entity that owes its existence to state action, such as the granting of a charter or license but that has no other connection with a state or local government or the federal government. The relationship must be an active one in which the department, agency, or instrumentality actually carries out some government function.

H.R.Rep. No. 595, 95th Cong. 311 (1977); S. Rep. No. 989, 95th Cong. 24 (1978). The Debtor does not actively carry out a government function of the Village. It is a commercial enterprise, in competition with other hotels and convention centers. The State of Illinois issued the Debtor's corporate charter, not the Village. The Debtor's business actively and indirectly impacts the Village's economy by providing jobs and broadening its economic base. Village officers and employees do not operate the hotel or convention center. The Village appoints its directors and certain representatives who are alleged to be actively engaged in the Debtor's business in light of their efforts to obtain a water recycling system, deal with a wind tunnel issue and obtain larger dinner plates for one of its restaurants. These are minor matters that do not exhibit the kind of control necessary to show that the Debtor is an instrumentality of the Village sufficient to exclude it from bankruptcy protection by section 101(41).

In *U.S. Trustee v. Hospital Authority of Charlton County (In re Hospital Authority of Charlton County),* 2012 WL 2905796 (Bankr. S.D. Ga. 2012) a bankruptcy court ruled that a hospital authority founded under Georgia law that authorized its creation and operation, was ineligible for bankruptcy protection under Chapter 9 of the Bankruptcy Code pursuant to 11 U.S.C. § 109(c)(2) which requires that municipalities have specific authorization via state law to file a petition for relief from the payment of its debts under any federal statute. Georgia law

states that each hospital authority shall be a "public body corporate and politic." *In re Hosp. Auth. of Charlton County*, WL 2905796, at *1. The statute also states that every hospital authority was deemed to exercise public and essential governmental functions and noted that each authority had the following powers:

> (1) To sue and be sued;
>
> (2) To have a seal and alter the same;
>
> (3) To make and execute contracts and other instruments necessary to exercise the powers of the authority;
>
> (4) To acquire by purchase, lease, or otherwise and to operate projects;
>
> (5) To construct, reconstruct, improve, alter, and repair projects;
>
> (6) To sell to others, or to lease to others . . . any lands, buildings, structures or facilities . . . In the event a hospital authority undertakes to sell a hospital facility, such authority shall, prior to the execution of a contract of sale, provide reasonable public notice of such sale and provide for a public hearing to receive comments from the public concerning such sale . . .
>
> (7) To lease . . . for operation by others any project, provided that the authority shall have first determined that such lease will promote the public health needs of the community by making additional facilities available in the community or by lowering the cost of health care in the community . . . ;

(8) To extend credit or make loans to others for the planning, design, construction acquisition, or carrying out of any project . . .;

(9) To acquire, accept, or retain equitable interests, security interests or other interests in any property, real or personal, by mortgage, assignment, security agreement, pledge, conveyance, contract, lien, loan agreement or other consensual transfer in order to secure the repayment of any moneys loaned or credit extended by the authority;

(10) To establish rates and charges for the services and use of its facilities;

(11) To accept gifts, and devises of property;

(12) To acquire by exercise of the right of eminent domain property essential to the purposes of the authority;

(13) To sell or lease within 20 years after the completion of construction of properties or facilities operated by the hospital authority where grants of financial assistance have been received from federal or state governments, after such action has first been approved by the department in writing;

(14) To exchange, transfer, assign, pledge, mortgage or dispose of real or personal property or interest therein;

(15) To mortgage, pledge, or assign its revenue, income, tolls, charges or fees received by the authority;

(16) To issue revenue anticipation certificates or other evidences

of indebtedness for the purpose of providing funds to carry out the duties of the authority; provided, however, that the maturity of any such indebtedness shall not extend for more than 40 years.;

(17) To borrow money for any corporate purposes;

(18) To appoint officers, agents and employees;

(19) To make use of any facilities afforded by the federal government or any agency or instrumentality thereof;

(20) To receive from governing bodies of political subdivisions issuing the same, proceeds from the sale of general obligation bonds or other county obligations issued for hospital authority purposes;

(21) To exercise any or all powers now or hereafter possessed by private corporations performing similar functions;

(22) To make plans for unmet needs of their respective communities;

(23) To contract for the management and operation of the project by a professional hospital or medical facilities consultant or management firm . . . .

(24) To provide management, consulting, and operating services . . . ;

(25) To provide financial assistance to individuals for the purpose of obtaining educational training in nursing or another health care

> field if such individuals are employed by, or are on an authorized leave of absence from, such authority or have committed to be employed by such authority upon completion of such educational training; . . .;
>
> (26) To exercise the same powers granted to joint authorities in subsection (f) of Code Section 31-7-72; and
>
> (27) To form and operate, either directly or indirectly, one or more networks of hospitals, physicians, and other health care providers and to arrange for the provision of health care services through such networks . . . .

O.C.G.A. § 31-7-75.

*Charlton County,* at 2-3.

Hospital authorities were prohibited from operating or constructing projects for profit and the interest on their revenue anticipation certificates were exempt from all taxes. *Id.*

Hospital authorities did not have the power to tax but they could contract with cities and counties to provide medical care to indigent persons. Those payments were authorized to be made from their general fund or by levying an ad valorem tax. Dissolution of a hospital authority required joint action of the authority's board and the county's governing body. Upon dissolution a hospital authority cannot, without specific legislation, convey its property to a private person or entity. *Id.*

The Hospital Authority of Charlton County filed a petition for chapter 9 bankruptcy relief on April 30, 2012. That region's U.S. Trustee sought its dismissal soon thereafter. The Hospital

Authority filed a motion to convert its case to chapter 11 of the Bankruptcy Code. The Hospital Authority conceded that its chapter 9 petition was not authorized. The Court found that the Hospital Authority could not convert to a chapter of the Bankruptcy Code unless it was eligible for relief thereunder. The case turned on whether the Hospital Authority was an ineligible governmental unit under 11 U.S.C. § § 109(d) - that only persons and entities eligible for bankruptcy relief under Chapter 7 may be a debtor under Chapter 11. Recall that 11 U.S.C. § 101(41) excludes governmental units from the definition of "person."

The Court found that because the Hospital Authority was created by statute, could exercise eminent domain, was exempt from paying taxes and received tax revenues from the County's general fund or from ad valorem taxes and issued tax-exempt revenue anticipation certificates, it was a governmental unit not eligible to seek bankruptcy relief. The Hospital Authority argued that it was not a governmental unit because it did not have sovereign immunity. The Court noted court rulings that certain entities were municipal or governmental units even though they did not have sovereign immunity. *Crosby v. Hospital Authority of Valdosta and Lowndes County*, 93 F. 3d 1515, 1519-20 (11th Cir. 1996). The Court held that the Charlton County Hospital Authority was ineligible for chapter 9 bankruptcy relief because the state of Georgia had not authorized such and that it was ineligible for chapter 11 relief because it was a governmental unit.

**Debtor's Prior Statements**

Statements made previously before taxing authorities are not binding. This court is not persuaded by the statements made in the 2003 application for exemption from the Illinois Retailers' Occupation Tax Act.

Debtor appropriately notes the analysis made by the *Monorail* Court in determining whether a debtor is a governmental instrumentality. Step one of the analysis involves determining whether the entity in question has any traditional governmental attributes or engages in traditional government functions. *In re Las Vegas Monorail Co.*, 429 B.R. 770, 788 (Bankr. D. Nev. 2010). The court must next focus on the extent to which the State controls the implementation of the functions and attributes determined to be traditionally governmental. *Id.* at 789. In addition, consideration is given to the State's categorization of the entity in question. Although this factor is not decisive, it is informative. *Id.* Although the Debtor made statements before the taxing authorities claiming that they were indeed an instrumentality, *Monorail* informs that, "it is not uncommon for the same word or phrase to have different meanings in different codes." *Id.* at 790. The Court noted that the *Monorail* debtor did not make its representation before the taxing administration with an acknowledgment that it was ineligible for chapter 11. It made its representation with an interest that the bonds remain free from taxation. *Id.* The same holds true for the statements made by LPFC in its 2003 effort to obtain an exemption from a tax.

The *Monorail* Court noted that the tax code definition of a governmental instrumentality is not the same as the Bankruptcy Code's: "[r]egardless of treatment under the tax code, however, the instrumentality test under the Bankruptcy Code is separate and independent." *Monorail*, at 795.

**Conclusion**

The Motions to Dismiss were denied on December 6, 2017; those orders stand.

This Amended Memorandum Opinion constitutes this court's findings of fact and conclusions of law.

**Date: December 18, 2017**

**ENTERED:**

J. Cox Jacqueline P. Cox

**Jacqueline P. Cox**
**United States Bankruptcy Judge**